UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENESCRIPT SERVICES, INC, a Florida corporation, BENESCRIPT CORPORATION, a Florida Corporation, and DIRECTSCRIPT CARE SERVICES, INC., a Florida corporation, | ) ) ) ) ) | 11-cv-9070 |
| Plaintiffs. | ) ) | |
| v. | ) ) ) | Judge Sharon Johnson Coleman |
| HEALTHTRAN LLC, a Delaware limited liability company, and HT THREE, LLC, a Colorado limited liability company, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The parties in this case are two sets of companies engaged in pharmacy-related businesses. In October 2008, the defendant companies, HealthTran LLC and HT Three LLC (collectively, "HealthTran") acquired most of the assets of the plaintiff companies, BeneScript Corporation, BeneScript Services, Inc., and DirectScript Care Services, Inc. (collectively, "BeneScript"). After the acquisition, BeneScript sued HealthTran in federal court, alleging that HealthTran breached the parties' purchase agreement in various ways. The court ordered the parties to arbitrate certain issues and stayed proceedings in the interim. The arbitrator issued an opinion favorable to HealthTran, and BeneScript now moves to vacate the arbitration award, arguing that the arbitrator decided issues outside the scope of his authority. Because the arbitrator decided only those issues that BeneScript itself asked the arbitrator to address, the court denies BeneScript's motion.

**BACKGROUND**

The parties executed a purchase agreement under which HealthTran acquired most of BeneScript's assets. Dkt. # 1-1. Section 1.8 of the agreement called for HealthTran to make three installment payments to BeneScript. *Id.* at 10–15. Under the contract, the amount of these payments depends on certain revenue figures following acquisition.

The contract also contains a provision governing disputes about the amount of the installment payments. This provision directs BeneScript to identify in writing any "alleged errors or inaccuracies and the basis therefor" in HealthTran's calculation of an installment payment. *Id.* at 12. The contract refers to these issues as "Disputed Matters" and uses that phrase as a term of art. The parties agreed to submit any unresolved disagreements about these issues to a mutually agreed-upon accounting firm. The contract limits the scope of the accounting firm's responsibility "to resolving only the Disputed Matters." *Id.* at 13. The contract also provides that the accounting firm's determinations are "final and non-appealable." *Id.*

On December 21, 2011, several years after the acquisition, BeneScript sued HealthTran, alleging that HealthTran breached the parties' purchase agreement in various ways. Dkt. # 1 at 4–6. HealthTran alleged, in part, that BeneScript improperly calculated the revenue figure used to determine the installment payments. On June 4, 2012, the court ordered the parties to arbitrate those issues concerning revenue calculation. The court also stayed the lawsuit pending completion of arbitration.

In June 2013, the parties selected an arbitrator and agreed to the terms of arbitration. Dkt. # 52-2 at 1–6. The parties agreed that the scope of the arbitration would "be defined by [their] submissions" to the arbitrator. *Id.* at 1. In a section of the agreement titled "final and

binding determination," the parties also agreed "to be bound' by the arbitrator's determination. *Id.* at 3.

Over the coming months, the parties presented their positions to the arbitrator in several filings. The parties disagreed about the scope of the arbitration. BeneScript, responding to HealthTran's position paper, maintained that "many of the matters argued in HealthTran's submission" fell outside the scope of the arbitrator's authority. Dkt. # 52-5 at 1. BeneScript argued that the arbitrator could not calculate the revenue figure at issue until the court first addressed "certain external factors and legal decisions." *Id.* at 2. HealthTran, in turn, argued that it addressed only those issued that BeneScript raised in its initial submission. Dkt. # 52-6 at 2–6. It argued that BeneScript's position "would require the arbitrator to perform the impossible task of determining the amount of gross revenue lost as a result of a particular practice or conduct without actually determining whether that practice or conduct actually occurred." *Id.* at 2.

On May 9, 2014, the arbitrator issued a thorough opinion in favor of HealthTran. Dkt. # 51-3. The arbitrator identified and addressed five separate disputed issues that he believed fell within the scope of the parties' submissions. *Id.* at 6. The arbitrator ultimately agreed with HealthTran's installment-payment calculation and determined that HealthTran did not need to adjust its calculations. *Id.* at 22.

**DISCUSSION**

*1. Legal Standard*

The Federal Arbitration Act authorizes federal courts to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10.

The Supreme Court has emphasized, time and time again, that federal courts must apply this provision against the backdrop of a federal policy supporting a presumption in favor of arbitration. Just last year, the Court, in an opinion construing § 10, was unambiguous that "courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (internal quotation marks omitted). Otherwise, the court explained, "arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.* (internal quotation marks omitted).

A party seeking to set aside an arbitration award "bears a heavy burden." *Id.* A court may not set aside an arbitration award for "even a serious error," so long as the arbitrator was "even arguably construing or applying the contract." *Id.* In the closely related context of arbitration clauses in labor agreements, the Supreme Court has said that errors that are "improvident, even silly" do "not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). An arbitrator acts outside the scope of his authority only when he issues a decision "that simply reflects his own notions of economic justice rather than drawing its essence from the contract." *Oxford Health*, 133 S. Ct. at 2068 (internal quotation and alteration marks omitted). Courts must

ask "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

In this circuit, courts "give great deference to the arbitrator's understanding of the parameters of the issues presented for arbitration." *Am. Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon*, 195 F.3d 832, 835 (7th Cir. 1999), and courts resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," *id.* at 836. Another circuit describes judicial review of an arbitration award as "one of the narrowest standards of judicial relief in all of American jurisprudence." *Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo, Int'l, Inc.*, 560 F. App'x 529 (6th Cir. 2014).[1]

To be sure, the mere presence of an arbitration clause in a contract does not remove all questions about the contract from the judicial ken. For example, questions about "contract formation," i.e., whether the parties ever agreed to the contract in the first place, are "generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). The Court has been clear that "[t]o satisfy itself that [an] agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have a court enforce." *Id.* at 297. In this case, however, the parties do not contest either the proper formation or the validity of the purchase agreement. Rather, BeneScript only contests whether the issues addressed by the arbitrator fall within the arbitration clause.

*2. The Parties' Arbitration*

---

[1] BeneScript cites *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010), where the Court held that an arbitration panel exceeded its authority when it ordered a party to submit to class arbitration. But the Court has said that it is a "misread[ing]" of *Stolt-Nielsen* to suggest it means that courts may vacate arbitration decisions even for misconstruing a contract. *Oxford Health*, 133 S. Ct. at 2070. In *Stolt-Nielsen*, the parties entered into an "unusual stipulation" on the specific point that they did not reach an agreement on class arbitration. *Id.* at 2069. Courts may vacate arbitration decisions not when an arbitrator "*misapprehended*" the parties' intent in a contract but only when the arbitrator made no effort at "his delegated task of interpreting a contract." *Id.* at 2070 (emphasis added).

5

As noted, the purchase agreement limits the scope of the accounting firm's authority "to resolving only the Disputed Matters." Dkt. # 1-1 at 13. The agreement defines "Disputed Matters" as "alleged errors or inaccuracies" in HealthTran's installment-payment calculations "and the basis therefor." *Id.* at 12. Additionally, the parties arbitration agreement provides that the "scope of the arbitration shall be defined by [their] submissions." Dkt. # 52-2 at 1.

BeneScript's initial submission to the arbitrator consisted of a four-page letter. In the letter, BeneScript provided a "discussion of HealthTran's breaches that have caused a material adverse effect on the calculation of Gross Revenue and on BeneScript's opportunity to realize the full amount of installment payments due and owing it." Dkt. # 52-3 at 1–2. First, BeneScript objected that HealthTran reduced its revenue figures by including "intercompany administrative fees." *Id.* at 2. Then, BeneScript maintained that HealthTran's manner of calculating "aggressive discounts to clients" in its revenue model was improper. *Id.* BeneScript then alleged, generally, that "HealthTran has not operated the business in accordance" with the purchase agreement." *Id.* It proceeded to offer "[s]pecific examples of how HealthTran has failed to operate the business in accordance" with the agreement, "all of which have decreased" revenue. *Id.* at 3. One of BeneScript's examples was HealthTran's use of a ninety-day pharmacy "fill period" that BeneScript said reduced revenue. *Id.* BeneScript concluded its letter by emphasizing that HealthTran's "post-sale business practices" resulted in "lost client contracts" and, therefore, decreased revenue. *Id.* at 4. Finally, BeneScript argued that it was "entitled to interest on the installment payments." *Id.*

In May 2014, the arbitrator issued a detailed opinion in favor of HealthTran. Dkt. # 51-3 at 22. BeneScript objects that the arbitrator decided issues beyond simply the amount of the installment payments. BeneScript contends that the focus on "external factors and legal

decisions" affected the calculation of revenue and, therefore, of the installment payments. Pls. Mot., Dkt. # 51 at 6. According to BeneScript's argument, the revenue figure is akin to a mathematical quotient and that the arbitrator was authorized to determine the quotient but not any of the dividends or variables that must be used to compute that quotient. Determining revenue necessarily requires resolving ancillary issues. The purchase agreement itself provides for the arbitrator to resolve "alleged errors or inaccuracies" in the installment-payment calculation and not just to review the final amount itself. Because the arbitrator's discussion of the ancillary issues arguably constituted "interpret[ing] the parties' contract," BeneScript's arguments fail.

Moreover, BeneScript cannot now cry foul when the arbitrator has resolved the very issues that BeneScript asked the arbitrator to address. The parties agreed in their arbitration agreement to allow their own submissions to define the scope of the arbitration. Each of the five primary sections of the arbitration decision corresponds directly to an issue raised by BeneScript in its initial submission statement. For example, Benescript asked the arbitrator to address "pricing" of drugs to clients, dkt. # 52-3 at 1, and the arbitration decision contains a section titled "Pricing of Prescriptions," dkt. # 51-3 at 7. Benescript asked the arbitrator to address HealthTran's use of a 90-day "fill period" instead of a 30-day "fill period . . . to facilitate the use of the mail order, dkt. # 52-3 at 3, and the arbitration section contains a section titled "Mail Order v. 90-day Prescription Retail Fill," dkt. $ 51-3 at 15. The other issues follow suit. BeneScript now appears to acknowledge that it "did not submit for the arbitrator's consideration any issues that were not *directly related* to the calculation" of revenue. Pls. Reply, Dkt. # 54 at 2 (emphasis added). Because the arbitrator limited his decision to those issues submitted to him by the parties, the arbitration decision is proper.

7

Under federal law, a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable," except in limited circumstances. 9 U.S.C. § 2. Here, BeneScript cannot carry the "heavy burden" required to vacate the arbitration decision. *Oxford Health*, 133 S. Ct. at 2068. That decision is binding. The arbitrator chosen by the parties was "arguably construing or applying" the parties' contracts. *Id.*

**CONCLUSION**

For the foregoing reasons, the court denies BeneScript's motion to vacate the arbitration award.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: November 6, 2014